## JOHN WATTS v. W. H. PATTON.

1. CHANCERY PLEADING. *Certainty of averments.*
    The averments of a bill must be definite and certain to warrant relief. Where a bill charges fraud, alleging a state of facts which, according to one theory, shows the fraud, and under another fails to do so, and it is uncertain from the allegations which theory is presented by the bill, a demurrer will be sustained.

2. SAME. *Fraud. Injury to complainant.*
    Where one partner, in conjunction with a third person, buys the assets of the firm, which is insolvent, and assumes the liabilities, and the seller afterward files a bill against his former partner to rescind, and for an account, on the ground of fraudulent representations as to the arrangement made with the third person, the bill must distinctly allege facts, showing injury to the complainant in the transaction, not merely the concealment by defendant of a benefit to himself.

3. AMENDMENT. *Application must show character of.*
    When a demurrer has been sustained to a bill, a decree refusing leave to amend will not be reversed where the record fails to show in what way the complainant proposed to amend.

FROM the chancery court of Clarke county.

HON. S. EVANS, Chancellor.

APPEAL from a decree sustaining a demurrer to a bill.

Appellant, Watts, in his bill of complaint against appellee, Patton, alleged in substance the following: That he and appellee were partners, under the firm-name of W. H. Patton & Co., conducting a mercantile business at Shubuta and at Sandersville, Miss., complainant owning something less than a half interest; that during the spring of 1886 the firm became involved in debt, and in March of that year made an assignment for the benefit of creditors, but the creditors ignored the assignment, and various attachments were

sued out and levied upon the assigned effects; that the debts amounted to about thirty-five thousand dollars, and the assets, consisting of goods, notes, and accounts, amounted to fifty-five thousand dollars; that both partners used every endeavor to compromise with creditors, but to no avail, and complainant, in despair, gave up further effort in this direction; that the defendant, Patton, continued his efforts and met one T. B. Bonner, with whom he effected an arrangement by which he, Bonner, was to advance the money for the assets and pay the firm debts, provided the creditors would settle for the price or sum at which the effects were to be taken; that Patton returned to complainant and informed him of the arrangement with Bonner, stating that Bonner was to take the goods, twenty-four thousand dollars, invoice price, and nineteen thousand dollars of the accounts at sixty cents on the dollar, and the remainder of the accounts, nine thousand dollars, at twenty-five cents on the dollar, provided the creditors would settle at a sum not exceeding this price, and provided further that complainant Watts would accept two thousand five hundred dollars of the assets and relinquish all his interest; that Patton further represented that Bonner was to take him, Patton, as a profit partner in the business for three years; that these were the best terms that Bonner could be induced to make, and that the only benefit that would accrue to him, Patton, would be to continue in business and share equally with Bonner in the profits for three years; that complainant relied implicitly upon these statements of his partner, and knowing, if they were true, that Patton would receive no greater benefit than he, and being unable to make better terms, he acceded to the arrangement, and quit-claimed all his interest in said assets to Bonner, receiving, as agreed, two thousand five hundred dollars of the same as consideration; that Bonner and Patton took the assets, assumed all liabilities of the firm, and continued the business until November 1, 1886, when they dissolved, Bonner receiving the goods and choses in action at Sandersville, and Patton receiving as his share the goods and accounts at Shubuta, worth at least twenty-five thousand dollars.

The assets were received by Bonner and Patton in April, 1886.

The bill in this case was filed August 29, 1888, against Patton alone. In addition to the above, the following statement is made, which constitutes the gravamen of the bill : " From these facts, some of which have recently been brought to the knowledge of complainant, together with other circumstances, your orator has been driven to the conclusion, and therefore charges, that the representations made to him by defendant as to the terms upon which the said Bonner offered to buy the assets of said partnership and pay off the indebtedness and admit defendant a partner with him, were wholly false and fraudulent, and made for the express purpose of inducing complainant to sell his interest in said partnership assets for a nominal sum. Complainant charges that the terms offered by the said Bonner were much more favorable to the interest of defendant than the latter represented to him, and he avers that but for said representations he never would have parted with his interest in said partnership property at so great a sacrifice."

It was further alleged that, of the two thousand five hundred dollars paid to complainant for his interest in the effects, he accepted a mortgage for one thousand four hundred and seventy dollars, which both parties believed to be good, but which turned out to be invalid and worthless by reason of a defect in the acknowledgment.

Complainant prays that the conveyance made by him to Bonner and Patton may be declared fraudulent and cancelled, so far as the defendant, Patton, is concerned ; that an account be taken in respect to the partnership effects, and that a decree be entered for the value of his share against the defendant.

Without filing any answer denying the allegations of fraud, the defendant demurred to the bill, and the demurrer was sustained, after which the decree recites : " Thereupon the complainant asked leave of the court to amend his bill, which leave is refused by the court."

*D. W. Heidelberg,* for appellant.

The question is not whether the bill is demurrable, but whether a case could be presented upon proper amendment which would entitle complainant to relief. If in any aspect complainant is en-

·titled to relief, he should have been permitted to amend. *Hiller* v. *Cotton,* 48 Miss. 593.

The representations made by Patton are alleged to have been false and fraudulent, and they constitute ground for equitable relief. *Mitchell* v. *Kintzer,* 47 Am. Dec. 408 ; *Mitchell* v. *Zimmerman,* 51 Ib. 717 ; 3 Wait's A. and D. 454.

.Patton in making the arrangement with Bonner was not acting for himself alone. He was a partner, and stood in a confidential relation to Watts at the time of making the representations. He ·will not be allowed to hold any advantage which he obtained by misrepresentation to one who trusted him. Story's Eq. Ju., §§ 218, ·220, 307, 323, 465, 466 ; 2 Kent 483; 3 Wait's A. and D. 436; 4 Kent 371.

This is not a bill for rescission. It is in the nature of an action for deceit, equity having jurisdiction because a discovery and an .account are necessary. As an accounting is involved, a jury could not make the investigation, and equity has jurisdiction. 1 Story's Eq. Ju., § 459 ; 2 Ib. p. 1. If complainant was entitled to any kind of relief, the amendment should have been allowed.

It is not necessary that the defendant should be put in *statu quo.* ,·Of course, the goods were sold in a short while.

Complainant is not to be prejudiced because of his efforts to collect the one thousand four hundred and seventy dollar mortgage. ·This mortgage was accepted under a mutual mistake of fact, both parties supposing it good. .But equity will grant relief even in ·case of a mistake of law.

The demurrer was to the whole bill. If it is good in part, the ·demurrer should have been overruled. Story's Eq. P., § 443 ; 50 Miss. 113.

The bill charges fraud, directly and positively. It avers certain facts, and charges, from these facts, " *together with other circum-* .*stances,*" that the representations were false and fraudulent, and were made to mislead complainant. This was sufficient to call for an answer.

*J. S. Hamm,* and *Witherspoon & Witherspoon,* for appellee.

The bill does not show what was the interest of complainant in

the effects. It avers that he owned less than a half interest. But the real value of the goods and choses in action is not stated. As the firm was in debt, the interest of complainant was necessarily uncertain and contingent; it might be something, or it might be nothing. He was a member of the firm and knew the value of the goods, and was willing to sell on the terms proposed by Bonner. There was no room for deception. He deliberately acceded to the proposition. Now, after the lapse of more than two years, being relieved from all the liabilities and having received part of the assets, he cannot have the transaction set aside. But he does not allege that Bonner bought the property for less than its value. His suspicion that Bonner gave more than Patton reported to him amounts to nothing. If the assets had been regularly closed out by the officials of the courts, he does not show that a dollar would have been left for either partner.

Bonner and Patton took all the risk; they had to settle with the creditors, and, of course, they made the best terms possible and used the assets to the best advantage.

The allegation in the bill as to the false representations made by Patton, and the fact that he made more favorable terms with Bonner than was reported, is not the statement of a fact; it is merely the allegation of complainant's opinion or belief. "From these facts and other circumstances," his inference or *conclusion* is that there was fraud. There is no positive and direct allegation of facts showing fraud. Where an act does not necessarily import fraud, it will never be presumed. *Gregg* v. *Sayre*, 8 Pet. 244; *Carter* v. *Lyman*, 33 Miss. 171; *Neighbors* v. *R. R. Co.*, 51 Ib. 412.

The whole of this paragraph in the bill, the only one in which there is any feature of a charge of fraud, is indefinite and uncertain. Will a defendant be compelled to answer a charge of fraud based on "other circumstances," when the circumstances are not stated? The paragraph is made up of complainant's conclusions, and if it were taken for confessed, no final decree could be rendered.

A party seeking relief for fraud must distinctly state the particular act, must specify how, when, and in what manner the fraud was perpetrated: the charge must be definite, reasonably certain,

capable of proof, and clearly proved. *Stearns* v. *Page*, 7 How. (U. S.) 829 ; *Harwood* v. *R. R. Co.*, 17 Wall. 81.

To vitiate a sale for misrepresentation the statement must relate to a material matter inducing the contract, respecting which the purchaser had no means of knowledge, and one on which he relied *to his injury.* *Slaughter* v. *Gerson*, 13 Wall. 379.

A party desiring to rescind a contract for fraud must announce his purpose to do so on discovery of the facts. *Grymes* v. *Sanders*, 93 U. S. 55 ; *Hall* v. *Thompson*, 1 S. & M. 443 ; *Estell* v. *Myers*, 54 Miss. 186 ; Geo. Dig. 748.

Complainant knew all the facts, but waited for more than two years before filing his bill. He does not pretend that he ever made any objection before this suit was brought. He stood by, knowing the facts, and saw the goods sold and debts paid, and he is estopped to object now. According to his own account, as given in the bill, he went into the transaction with the greatest deliberation. The case was a desperate one. There was a prospect of a long and profitless litigation in which all might be lost, leaving the creditors in great measure unsatisfied. After careful consideration, Bonner's proposition was accepted, *and it was carried out.* After getting all the benefits, and when nobody can be put in *statu quo,* appellant seeks to have this complicated business undone and done over again.

In his remarkable bill the complainant does not state what the assets were worth, or that they were worth a dollar more than Bonner proposed to give for them. The long silence, and the acquiescence of complainant in all that was done, shows that this suit is an *afterthought.* He has watched his old partner, who has now worked out of debt and has a mercantile establishment, and the idea has taken lodgment in his mind that he should have received more than he got of the old assets. And he seems to think he is entitled to credit, because he was willing, as he says, to refer this " controversy " to arbitration. This he evidently thinks places him in a more favorable light, if, indeed, it does not give him a sort of equity.

Complainant comes too late with his bill. He seeks to rescind

*an executed contract.* In an application for rescission there must be no unnecessary delay. If there has been negligence in this respect, and there has been a change affecting the contract in any material particular, the court will not interfere. 1 S. & M. 443; *Ayres* v. *Mitchell,* 3 S. & M. 683; *Liddel* v. *Sims,* 9 Ib. 596; 13 Ib. 58; 33 Miss. 215; 93 U. S. 55; 3 Selden 227.

In a bill for rescission, the complainant must offer to restore what .he has received under the contract. 41 Miss. 722; 43 Ib. 734, 517. Complainant does not offer to restore anything, and the court cannot place the parties back where they were. Cancellation of an executed contract will never be decreed, except in a clear case of fraud. *Atlantic* v. *James,* 94 U. S. 207.

Complainant merely asked leave to amend, but presented no amendment and did not even ask for time to do so. He did not state what sort of amendment he wished to make, and the court properly refused the application.

COOPER, J., delivered the opinion of the court.

The averments of the bill are so vague and indefinite that it is impossible to say what are the facts relied upon by the complainant for relief. If Bonner paid all he undertook to pay, and in consideration thereof was to have the entire assets of the firm of Watts & Patton except only the portion reserved to Watts, the complainant would have no just ground of complaint, even if, as between. Bonner and Patton, an arrangement more beneficial to Patton had been previously stipulated for by him than he divulged to complainant. The misrepresentation under such circumstances would be immaterial, because whether what Patton said was true or false could not damage Watts. On the other hand, if Patton, who was a joint owner with Watts, and who took upon himself the duty of finding a purchaser of the common property, fraudulently concealed from his co-owner the price at which Bonner agreed to buy, and procured Watts to sell at a smaller sum; or if Bonner was to pay the sum named for a part interest only in the assets, leaving an interest in Patton, Watts was thereby defrauded by Patton, and would be entitled to hold him as trustee for the in-

creased price received or for the interest in the assets secured to himself by the sale. We do not know upon which of these theories complainant proceeds. The only averment in reference to the facts is that "Patton made an arrangement with Bonner more favorable to himself than he represented to complainant," but whether this arrangement was injurious to complainant, and if so how, is not stated. It must be an injury to complainant and not a mere benefit to Patton to give a right to complainant to relief. The demurrer was therefore properly sustained.

It is next said that the court should have permitted the complainant to amend his bill, but the record does not show in what way he proposed to amend. Not knowing what amendment was desired, we cannot say that the court erred in refusing to permit it to be made.

*The decree is therefore affirmed.*