RICHARD S. WEIR *v.* ANN J. JONES ET AL.

1. CHANCERY PLEADINGS. *Fraud. Facts must be pleaded.*

A bill in equity, to set aside a sale under a deed of trust on the ground of fraud, is demurrable, if it fail to state the facts of which the charge of fraud is predicated.

2. SAME. *Trust deed. Foreclosure. Notice.*

A bill in equity to set aside a sale of lands is demurrable, if it admit that the lands were regularly sold, under a valid deed of trust, for the collection of a just and past due debt, and that complainants knew of the sale in ample time to have enjoined the same on any valid objection, although it charge that the sale was the result of a conspiracy between the trustee and the holder of a junior mortgage on the land, and that the beneficiary in the deed of trust did not desire to foreclose the deed when the sale was made.

3. SAME. *Substituted trustee. Duty.*

Where the beneficiary in a deed of trust regularly appointed a substituted trustee, by a writing containing a direction that the trustee proceed to foreclose the deed, it is the duty of the trustee to proceed as directed.

4. SAME. *Tender of interest.*

The trustee in a deed of trust to secure a past due debt is not required to postpone a duly advertised sale of the property because the debtor tenders part payment, the interest, in the absence of any provision to that effect in the deed.

5. SAME. *Foreclosure. Agreement with junior incumbrancer.*

If the beneficiary in a deed of trust had the right to have it foreclosed when the sale was made, the fact that it was made as the result of an agreement with a junior incumbrancer in no way affects its validity.

6. SAME. *Junior mortgage.*

Where a senior lien is duly enforced by the sale of land the validity of the sale is not affected by the invalidity of a junior mortgage.

FROM the chancery court of, second district, Carroll county. HON. ADAM M. BYRD, Chancellor.

Jones and another, appellees, were complainants, and Weir, appellant, was defendant in the court below. From a decree in complainants' favor the defendant appealed to the supreme court. The opinion states the case.

*Alexander & Alexander,* and *J. N. Flowers,* for appellant.

[The briefs of counsel for appellant were lost from the record before it reached the reporter.]

*Brame & Brame,* and *J. S. Smith,* for appellees.

The whole gravamen of the bill is that the defendant, Weir, through fraudulent conduct and a breach of trust, secured the legal title to the land, and a demurrer will not lie to such a bill. The defendant in answering the averments of fraud and misconduct would have to answer the entire bill. Having done this, he could not demur, because a defendant cannot answer and demur at the same time. He may demur to a part of the bill and answer a part, but the answer and demurrer must refer to separate and distinct parts. He cannot answer the whole bill and then demur, because the answer necessarily waives or overrules his demurrer. *Fall* v. *Hafter,* 40 Miss., 606; *Hentz* v. *Bank,* 76 Miss., 429; *Sledge* v. *Dixon,* 81 Miss., 501.

In *Hentz* v. *Bank,* this court states the rule which we think applicable to this case in the following language: "It is well settled, of course, in this state, that when a bill charges fraud that is material and which, if true, entitles to relief, the respondent should answer, denying the fraud. He may then demur, if the demurrer be limited to other separate and distinct parts of the bill, setting up equitable grounds for relief disconnected from the fraud."

Disconnected from the fraud and breach of trust in this case, there is nothing for the demurrer to reach; therefore, manifestly, it was properly overruled.

We beg to call the especial attention of the court to the fact that the bill charges that the reason the land was sold was because of the failure of the complainants to make to the mortgage company the payment due for the year 1901. This is recited in the deed from the trustee, and yet this is the very payment that the trustee, Flowers, refused to accept. Thus showing that the fraudulent trust deed or mortgage obtained by the defendant, Weir, from the complainant under the peculiar circumstances alleged in the bill would naturally affect the sale of the property under the trust deed of the mortgage company, the bill alleges that the trustee himself stated that it would be useless for the complainants to make the payment due the mortgage company, because the defendant, Weir, would, notwithstanding this, sell the property under his mortgage.

Even if there had been no collusion between the trustee of the mortgage company and the defendant, Weir, the fact that the defendant, Weir, had tied up the property of the complainants by securing a mortgage thereon for a large amount which represented a fictitious and fraudulent debt, when he knew that this was the only property or means that the complainants owned, would be in itself sufficient to authorize a court of equity to set aside the sale, especially in view of the inadequacy of the price and the fact that the defendant, Weir, was himself the purchaser in violation of his trust.

It will be borne in mind that the rights of no third persons are involved and that the question is one addressed to the conscience of the court as to the right of the defendant to hold the advantage he has wrongfully and unjustly obtained as against the complainants—that is, whether he shall be allowed to hold this valuable plantation for $1,287.76, when it appears that one hundred acres of land, less than one-fifth of the whole, could have been and would have been sold for $1,250 but for his interference.

The agency or trust of the defendant, Weir, was voluntarily assumed by him. He was under no obligation to assume it.

He was not called upon to look after the interest of complainants; and, notwithstanding their misfortune, if he had dealt with them at arm's length and had purchased at a fair sale, made under the trust deed of the mortgage company, he would occupy a very different position before the court. But he undertook certain obligations, from which he could not recede in order to advance his own interest at the sacrifice of those which he had undertaken to safeguard on behalf of complainants. Although he may have intended at the outset to aid the complainants, yet he did not assume this trust through motives of disinterested philanthropy or charity. He desired to realize the profit which there would be on the trade of the tenants on the plantation. It was no doubt a source of great profit for him to supply them, and this consideration no doubt influenced him at first; but afterwards, as matters progressed and when misfortunes had overtaken the complainants, he conceived the design of securing a title to the plantation, and this temptation was so great that he yielded to it, although it involved a breach of trust and a violation of his express agreement to aid the complainants in protecting this very property.

The inquiry suggests itself, Why did not the defendant undertake to sell the property under his own mortgage? The answer is manifest: Being the mortgagee, although with a power of sale, he could not purchase at his own sale. *Houston* v. *Building Association,* 80 Miss., 31.

The fact, however, that he could not become the purchaser at his own sale afforded no reason why he should not sell the property under his mortgage, and let others buy. The very fact that he failed to do this indicates two things: First, that he desired to become the owner of the property himself; and second, that he did not wish to go into a court of equity to foreclose his mortgage. Therefore, he set about procuring the foreclosure of the trust deed of the mortgage company in order that he might purchase thereunder, at the same time holding his own fraudulent mortgage on the record and in the eyes of the

---

public to cover up the equity of redemption and thereby prevent others from bidding at the sale under the trust deed of the mortgage company. It is expressly charged in the bill that this was his purpose and that the purpose succeeded, and this fact is also admitted by the demurrer.

Argued orally by *C. H. Alexander,* for appellant.

TRULY, J., delivered the opinion of the court.

No principle of equity jurisprudence is more firmly established than that, where fraud is relied on as a basis of relief sought from a chancery court, the facts of which the charge of fraud is predicated must be specifically stated with full definiteness of detail. No general averment of a fraudulent course of business, and no bare statement of a corrupt design on the part of the defendant, is sufficient. The acts themselves which are claimed to be fraudulent must be clearly set out. It must further appear, by definite averment, in what manner the fraudulent acts wrought injury to the complainant. Fraud cannot be inferred, but must be distinctly charged, and with such fullness and precision that a court of chancery would be enabled to grant full and complete relief and redress should the bill of complaint be taken as confessed. A court of equity, from a mere vague and indefinite statement that a certain course of conduct was in pursuance of a fraudulent scheme, will not infer fraud on the part of the defendant, and consequent injury to the complainant. *M. & C. R. R. Co.* v. *Neighbors,* 51 Miss., 412; *Watts* v. *Patton,* 66 Miss., 54 (5 South., 628); *McInnis* v. *Wicassett Mills,* 78 Miss., 52 (28 South., 725).

In the bill of complaint in the instant case, there is no compliance with the rule of equity pleading announced. While many vague, uncertain, and indefinite charges of a general character are made, averring that in the entire course of business between complainants and the defendant the defendant was actuated by a corrupt and fraudulent design, no specific fraudulent acts

are set out with that distinctness and certainty which is de-
manded in charges imputing fraud, nor is it shown in any man-
ner that the complainants were by this course of dealing
wronged or injured. While the allegations were so vague as
to scarce require a denial, the record discloses that appellant
filed an answer expressly denying all fraud on his part. True
it is that the denial is in broad and general terms, but the bill
of complaint charged the fraudulent conduct in such an uncer-
tain way as to furnish the defendant no definite information
whereby he could make his denial any more specific. With the
charge of fraud answered and properly denied, the bill of com-
plaint states no facts showing that complainants were injured
or suffered any such wrong as would authorize a court of equity
to grant the relief prayed for. More than this, conceding as
true all the well-pleaded and relevant facts, the bill of complaint
affirmatively shows such a state of case as would prevent the
complainants from obtaining relief in the manner they seek.
The bill admits that the land in question was sold in a strictly
legal manner, under a perfectly valid trust deed, for the collec-
tion of an indebtedness acknowledged to be just, true, correct,
and past due. It further appears that complainants were ad-
vised of this sale in ample time, had they so desired, to have in-
voked the aid of a court of chancery to prevent the sale, had
there been any valid objection thereto, but that, acting on the
advice of their attorney, they decided to permit the sale to pro-
ceed, intending to institute suits in reference to the subject-
matter thereafter. The bill, it is true, does aver that the mort-
gagee did not desire to foreclose its lien at that time, and that
the foreclosure sale was the result of a conspiracy between the
substituted trustee and the appellant, who was a junior mort-
gagee of the property; but this charge cannot avail, for the rea-
son that the written appointment of the substituted trustee,
which appears as an exhibit to the bill of complaint, distinctly
states that the said mortgagee—the British & American Mort-
gage Company—"does now, moreover, request and direct that

he will forthwith proceed to execute the trust therein contained." Under this appointment and direction the substituted trustee was not only empowered, but it became his imperative duty, to make the sale of the property under the trust deed, which appellees in their bill of complaint confess had been defaulted and the entire indebtedness secured thereby justly due by them. Nor does the bill of complaint state any fact which justifies the intimation that the substituted trustee was guilty of any wrongful act towards the complainants or was guilty of any oppression or disregard of their rights. The fact that he refused to receive the interest and postpone the sale of the land was in accordance with his duty toward the mortgagee, by whom he had been substituted as trustee, and, so far as this record shows, he was clothed with no authority at the time the money was tendered to exercise any discretion or to act in any manner other than as he was specifically directed by the letter of his appointment. The entire indebtedness under the terms of the trust deed was due and collectible, and the expense incident to the preparation of the necessary papers and the advertisement of the proposed sale had already been entailed. Under such circumstances, and at such a time, it would have been a willful and deliberate disregard of duty on the part of the substituted trustee to have acted in a manner otherwise than he did. Nor would it avail the appellees aught, assuming it to be true that both the appellant and the substituted trustee intended, in making the sale, to thereby further the interest of the appellant. The law cannot concern itself with the motives of parties when their acts are legal and violate no principle of right. As was said by the supreme court of the United States in the case of *Dickerman* v. *Northern Trust Co.,* 20 Sup. Ct., 311 (44 L. ed., 435): "If the law concerned itself with the motives of parties, new complications would be introduced into suits which might seriously obscure their real merits. If the debt secured by a mortgage be justly due, it is no defense to a foreclosure that the mortgagee was animated by hostility or other bad motive. *Davis* v. *Flagg,*

35 N. J. Eq., 491; *Dering* v. *Winchelsea,* 1 Cox, Ch. Cas., 318; *McMullen* v. *Ritchie* (C. C.), 64 Fed., 253, 261; *Toler* v. *East Tennessee, V. & G. R. Co.* (C. C.), 67 Fed., 168.

In this case the bill shows affirmatively that the mortgage was legal, that the debt secured thereby was due, and that the complainants, acting under legal advice, decided to make no further payment on the first mortgage debt, and voluntarily refrained from making any effort to prevent the sale for the satisfaction thereof; and there is neither averment nor proof that the mortgagee was influenced by any other motive than a desire to collect the money due. To disturb a sale made under such circumstances because of the fact that the substituted trustee and a junior mortgagee expected or intended to profit thereby would be an unwarranted extension of the legal principles applicable to such cases. From this view it is not material whether the junior mortgage was in fact for a just and legal indebtedness or not. Appellant purchased at a foreclosure of a senior mortgage at a sale regularly and legally held, and appellees cannot now set aside this sale for the purpose solely of having the property resold, with the bare hope that it might realize more than is justly owing thereon. We are unable to see from the facts disclosed by the bill of complaint how the fact that a junior mortgage rested on the property at the time of the sale could in any manner have prejudiced the rights of appellees. Whether fraudulent in whole or in part, it could in no legal way have deterred bidders, for the reason that the purchaser under a senior mortgage sale takes to the exclusion of all junior incumbrances. The bill of complaint shows no cause of action which would authorize a court of chancery to set aside the sale of the land under the circumstances detailed, and the demurrer should have been sustained.

*Wherefore the decree is reversed, the demurrer sustained, and the case remanded, with leave to amend within sixty days from filing of mandate in court below.*