# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00799-COA

IN THE MATTER OF THE ESTATE OF          APPELLANTS
RICHARD HAROLD FLOWERS, JR.: CLAIRE
C. FLOWERS AND BRENDA JANE FLOWERS
PAIXAO

v.

THE ESTATE OF BRENDA LOUISE BARGAS          APPELLEES
FLOWERS, THROUGH ITS EXECUTOR DE
BONIS NON WITH WILL ANNEXED,  KNOX
LEMEE FLOWERS, CECIL C. LANG AND
LINDA S. LANG

DATE OF JUDGMENT:         05/06/2016
TRIAL JUDGE:         HON. MICHAEL H. WARD
COURT FROM WHICH APPEALED:         LEFLORE COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANTS:         DAVID NEIL MCCARTY
ATTORNEYS FOR APPELLEES:         FLOYD M. MELTON JR.
         FLOYD M. MELTON III
         RICHARD A. OAKES
NATURE OF THE CASE:         CIVIL - WILLS, TRUSTS, AND ESTATES
DISPOSITION:         AFFIRMED - 01/02/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., CARLTON AND GREENLEE, JJ.**

**CARLTON, J., FOR THE COURT:**

¶1.     Claire Flowers and Brenda Jane Flowers Paixao (Jane) appeal the final judgment entered by the Leflore County Chancery Court in the probate of the estate of their father, Richard Harold Flowers Jr.[1]

---

    [1] In their notice of appeal, Claire and Jane specified that they are appealing the Leflore Chancery Court's final decree docketed May 9, 2016, as well as all other orders

¶2. On appeal, Claire and Jane assert the following assignments of error: (1) their brother, Knox Lemee Flowers, lacked standing to be named executor of Richard's estate; (2) the chancellor's final decree failed to follow Richard's intent as expressed in his will; (3) the chancellor erred in awarding attorneys' fees to Knox's attorneys; (4) the chancellor erred by denying Claire and Jane's Mississippi Rule of Civil Procedure 15(a) motion to amend their petition. We find no abuse of discretion by the chancellor, and we therefore affirm. *See generally Nichols v. Phillips (In re Estate of Brill)*, 76 So. 3d 695, 698 (¶13) (Miss. 2011).

**FACTS**

¶3. On December 19, 2001, the Leflore County Chancery Court[2] appointed Brenda Bargas Flowers to represent her husband, Richard Flowers Jr., as his conservator due to Richard's physical and mental incapacity and inability to manage his affairs and his estate.

¶4. On December 14, 2005, Richard and Brenda filed a petition to adopt D.A.,[3] the biological child of Richard and Brenda's daughter, Claire. The chancellor granted the petition on December 15, 2005, and entered an order of adoption, stating that D.A.

> be, and he is hereby decreed to be, the child of [Richard and Brenda], who shall have the exclusive custody of [D.A.], and equal parental rights, duties and responsibilities of and toward him to the extent they both were his natural parents with all the incidents, mutual rights, privileges, benefits, duties and responsibilities arising from a natural born parent and child relationship[.]

The order also provided that D.A. "shall inherit from and through" Richard and Brenda.

entered in this matter and docketed that day.

[2] The record reflects that over the course of these proceedings, several chancellors were appointed to, and later recused themselves from, this cause.

[3] We have substituted initials for the minor's name.

2

¶5. Sadly, the record reflects that on April 25, 2006, a few months after adopting D.A., Richard died. In his last will and testament, dated January 21, 1983, Richard named his widow, Brenda, as the executor of the estate. Brenda filed a petition to probate the will, and on July 14, 2006, the chancellor appointed Brenda as executor of Richard's estate. Regarding the appointment of alternate executors, Richard's will specified:

> [I]f [Brenda] fails to qualify or ceases to act, I appoint as executrix of this will my wife's biological mother, Helen Audry Creasay Baker, to serve . . . , or should she fail to qualify or cease to act[,] I appoint as executor of this will The First Greenwood Bank, a Branch of Grenada Bank, in Greenwood, Mississippi[.]

¶6. Richard left to Brenda all of his "clothing and personal effects, all boats, boat trailers, boat motors, and all automobiles and vehicles" registered in his name, and stock, among other things. Richard expressed in his will that he made no disposition of household furniture or chattels located in his and Brenda's residence, as the items also belonged to Brenda.

¶7. Significant to the issues raised in this appeal, Richard further devised all of his "residuary estate, being all property, real and personal, wherever situated, in which [he] may have any interest at the time of [his] death not otherwise effectively disposed of . . . to Brenda . . . should she survive [him] for a period of 179 days[.]" Richard's will explained that should Brenda fail to survive Richard for 179 days, the property would then be held in a trust for his son, Knox; daughter, Claire; and

> any other child or children **born** to my wife, Brenda[,] . . . and me, in such proportions and in such manner as my trustee shall deem necessary or desirable in their absolute discretion, for the beneficiaries' health, education, welfare, support and maintenance in their accustomed manner of living.

3

(Emphasis added).[4]

¶8. Richard's will further provided as follows:

> This Trust shall exist until the youngest living child of mine and my wife attains the age of twenty-five years, at which time the trust will terminate and all the remaining assets of this Trust shall be conveyed and delivered, to my children, Claire Clements Flowers, Knox Lemee[] Flowers and any other child or children **born** to my wife, Brenda Bargas Flowers, and me, in equal shares, per stirpes[.]

¶9. Brenda began her duties as executor after her appointment on July 14, 2006. However, Brenda died on August 25, 2006, approximately 122 days after Richard's death. Brenda's will named Knox as the executor.

¶10. On September 6, 2006, Knox filed a petition for appointment as Executor De Bonis Non with Will Annexed (hereafter "Executor").[5] In his petition, Knox acknowledged that Richard's will named Brenda as executor of Richard's estate. Due to Brenda's death, Knox requested to be substituted as Executor of Richard's estate. Knox also filed a petition to probate Brenda's estate and requested that a guardian ad litem be appointed for D.A., who was two years old at the time of the filing.[6]

---

[4] We note that Jane is Brenda's biological daughter. Richard also had three other children who are not parties to this action.

[5] Mississippi Code Annotated section 91-7-69 (Rev. 2013) provides that "[i]f an executor or administrator die, resign, be removed, or become incompetent, letters of administration de bonis non with the will annexed, or de bonis non, shall be granted to the person entitled, and he shall proceed in the administration of the estate."

[6] The chancellor appointed a guardian ad litem for D.A. On September 8, 2006, the guardian ad litem requested that the chancellor "award temporary sole physical custody of [D.A.] to Warren Simpson." Finally, on November 13, 2007, the chancellor entered a final judgment awarding custody of D.A. to his paternal grandparents, Carter and Linda Lang.
On February 8, 2008, upon petition by Knox, Richard's conservatorship was

¶11. The record reflects that while Knox served as Executor of Richard's estate, the chancellor approved and authorized Knox's sale of real property owned by Richard's estate as follows: (1) a May 16, 2008 order approving the sale by Knox of real property located at 304 East Monroe Street, Greenwood, Mississippi, for the amount of $65,000, less the prorated taxes for the year 2008, a six-percent commission to Bowie Realty in the amount of $3,900, and a termite inspection in the amount of $107; (2) a September 11, 2009 order approving the sale of real property located at 306 West Church, Greenwood, Mississippi, for the amount of $20,200 and authorizing the execution of any and all documents necessary to complete the sale, less the prorated taxes for the year 2009 in the amount of $1,225.32, and a six-percent commission to Bowie Realty in the amount of $1,212. The record shows that all of the beneficiaries of Richard's will received notice of the sale of the real property. The chancellor then ordered Knox, as Executor, to deposit the balance of the funds in the estate account.

¶12. Additionally, in his capacity as Executor of Richard's estate, and again with notice to all of the intended beneficiaries named in Richard's will, Knox liquidated Richard's investment account and deposited the balance of the funds in the estate account.

¶13. The record reflects that during the course of the lengthy litigation below, Claire filed several motions relating to Richard's estate, including a December 2007 motion seeking a full accounting of Richard's estate and Brenda's estate, and a January 2008 motion to

terminated and closed, and the chancellor entered an order ratifying and approving Brenda's actions as conservator as evidenced through accountings filed by Brenda during her tenure as Richard's conservator.

5

disqualify Knox as the Executor.  The chancellor addressed all of Claire's motions in an order dated February 8, 2008.  The chancellor ultimately ordered as follows:

> The Conservatorship [of Richard by Brenda] is terminated and closed[.]
>
> . . . .
>
> Knox, as Executor of [Brenda's Estate], . . . will list the household goods and personal belongings of Brenda . . . , as well as lockbox contents that came into his possession as Executor and will state where these items are presently located, and any items converted to his personal possession or disposed of for his benefit will be noted and charged against any Executor's fee, as may be determined and approved by this Court.
>
> . . . .
>
> Knox, as Executor of [Brenda's Estate], shall furnish an accounting of the Estate from the date of death to the date of any final decree granting [Claire] Guardianship of [D.A.] due to the appeal on file at this time . . . and that [Claire] is entitled to an accounting, if and when she becomes a vested remainder beneficiary of this estate from the date of such vesting until delivery of assets to her.
>
> . . . .
>
> [T]he probated claim of [Claire] . . . is granted in the amount of $1,200.00 and this court authorizes and directs [Knox] to pay said sum in full satisfaction of the probated claim.

The record also reflects that in the February 2008 order, the chancellor granted Claire "leave to withdraw her Petition for Disqualification of [Knox as the] Executor (Fiduciary) dated January 28, 2008," and ruled that "it is therefore withdrawn."

¶14.  Claire later filed a motion requesting that the chancellor recuse himself, claiming that she discovered evidence of judicial misconduct.  The chancellor denied Claire's motion, stating that Claire failed to present any facts to substantiate her allegations.  The chancellor also admonished Claire "for bringing frivolous motions."

6

¶15. On September 4, 2009, Claire filed her second motion for disqualification of Knox as executor of Richard's estate, arguing that Knox failed to follow the instructions of Richard's will since no residuary or assets passed to Claire or Knox as bequeathed in Richard's will. Relative to this claim, the record reflects that the chancellor found that no assets remained to pass to the beneficiaries of Richard's will. Claire further asserted that Richard's will provided that an accounting shall be done by the executor and given to the heirs once a year. Claire claimed that Knox failed to provide an accounting as requested by the will.

¶16. Claire also argued that Richard's will provided that Brenda is to be named executor, and that if Brenda should fail to qualify as executor, then Richard's will named Brenda's mother, Helen Baker, as the alternate executor. Claire claimed that Helen informed Claire that she was never approached to be executor of Richard's will and did not know that Richard named her as an alternate executor in his will.

¶17. The chancellor held a hearing on the matter on September 11, 2009, and ultimately denied Claire's motion to disqualify Knox as Executor. The chancellor found that Claire presented no facts to substantiate her claims that Knox should be disqualified as Executor. The chancellor also found that Claire's motion was "substantially the same petition and claims as . . . filed . . . on January 28, 2008, by Claire, and was set to be heard on February 1, 2008, when [Claire] was granted leave of the court to withdrawn her petition." As a result, the chancellor admonished Claire for bringing repetitive and frivolous motions.

¶18. Over the next several years, Claire filed numerous petitions revolving around the care and adoption of D.A. On August 19, 2013, the chancellor entered a decree of adoption

stating "[D.A.], a child born on July 10, 2004, be and is hereby adjudged and declared to be adopted by [his paternal grandparents,] . . . Cecil Carter Lang and wife, Linda S. Lang, and that the said child and the [Langs] be given and accorded all of the rights, benefits and responsibilities arising from a natural born parent and child relationship."

¶19. On April 15, 2015, Claire filed a petition for a full accounting, asserting again that she believed that Knox misappropriated funds and chattels belonging to Richard's estate, and that Knox mismanaged the estate to the detriment of the heirs and against the instructions of Richard's will. As stated, Claire's claims of mismanagement stem from the lack of sufficient assets in Richard's estate to pass to the will's beneficiaries.

¶20. The record reflects that on September 15, 2015, Claire, acting pro se, filed a 616-page pleading in the trial court challenging prior rulings and raising various claims for relief. In this 616-page pleading, Claire set forth petitions for the following: (1) a trial by jury, (2) a change of venue, (3) relief from the judgments, and (4) requested compensatory and punitive damages. Claire named her sister, Jane, as an interested party.[7]

¶21. In this 616-page pleading, Claire set forth her petition for relief from the judgments, claiming that she was entitled to relief from the prior orders of the chancellor, including the final decree of adoption of D.A., due to fraud, misrepresentation, negligence, and misconduct by numerous parties, including Knox, Floyd Melton Jr. and Floyd Melton III (Knox's attorneys), Cecil and Linda Lang, and Richard A. Oakes Jr. (attorney for the Langs). Claire asserted that the numerous chancellors assigned to this action acted

---

[7] However, Jane did not join this action as a party until December 2015, when she filed a notice of joinder in the motion for a full accounting of Richard's estate.

8

in ways prejudicial to the administration of justice and to the ideas of "fair" hearings. The [d]efendants, including the chancellors, intentionally made their actions and inactions so convoluted between the cases to ensure that no one would be inclined to assist Claire with correcting the great injustice that has occurred.

¶22. In this same petition for relief from the judgments, Claire further asserted that Oakes and the Langs were brought into these cases to ensure that D.A. was kept away from her, and to "ensure that their own pockets were lined with funds 'legally obtained' through the court, a court which was prejudicial and unable to provide the appropriate administration of justice." Claire also alleged that the Langs and Oakes ensured the Langs would wrongfully obtain Social Security death benefits on behalf of D.A. by keeping his last name as Flowers and not notifying Social Security of the adoption of D.A. in August 2013. Finally, Claire alleged that Oakes was in direct violation of Mississippi Rules of Professional Conduct.

¶23. In her petition for compensatory and punitive damages, also set forth in the 616-page pleading, Claire claimed that she suffered the following:

> [P]hysical, emotional, and monetary damages as a direct result of the actions and inactions of the [d]efendants (excluding Brenda Jane Paixao, D.A., and Christopher Lang) . . . [and she] is entitled to an award of compensatory and punitive damages for fraud, negligence, negligence per se, gross negligence, breach of fiduciary duty, intentional infliction of emotional distress, conversion, civil conspiracy, and malice.

¶24. On January 4, 2016, Claire filed an amended petition for compensatory and punitive damages, which constituted part of the 616-page pleading, claiming that the proximate consequences of the defendants' negligence or wantonness, jointly and severally, caused Claire to suffer physical and emotional injuries and monetary damages. On January 8, 2016, Claire filed a motion for leave to admit an amended petition for compensatory and punitive

9

damages, part of the 616-page pleading.

¶25. On January 19, 2016, the chancellor held a hearing on Oakes's Mississippi Rule of Civil Procedure 12(b)(6) motion to dismiss Claire's 616-page pleading. Oakes argued that "[n]owhere in [Claire's] petition does anything come anywhere close to pleading fraud with the degree of specificity required to survive a Motion to Dismiss." The chancellor issued a bench ruling granting Oakes's Rule 12(b)(6) motion to dismiss. The chancellor also granted Oakes's and the Meltons' motions to strike themselves as defendants in the cause due to Claire's failure to obtain leave from the court under Mississippi Rule of Civil Procedure 21 to add them as defendants. The chancellor advised Claire to file a written motion "to add Oakes or whoever as a defendant." The record reflects that Claire filed no appeal of the chancellor's rulings regarding the Rule 12(b)(6) motion to dismiss or motion to strike. Thus, Oakes and the Meltons were stricken as defendants from this action.

¶26. On February 16, 2016, in response to the chancellor's order of dismissal under Rule 12(b)(6), Claire filed a Mississippi Rule of Civil Procedure 15(a) motion for leave to amend her 616-page pleading. In her motion, Claire stated that she "specifically requests that she be allowed to amend those portions of the complaints by which the court ruled were insufficient at stating a claim for relief. Those portions include stating fraud and negligence per se with the correct specificity."

¶27. On February 26, 2016, Oakes filed a response to Claire's Rule 15(a) motion for leave to amend her 616-page pleading, requesting that Claire's motion be denied. Oakes argued that Claire failed to "attach a proposed amended petition that would permit the chancellor to determine whether justice requires that leave to amend be granted." Oakes further stated that

10

he

> was dismissed as a respondent in the above captioned causes as a result of [Claire's] failure to obtain leave of court to add him as a party. Even if the [c]ourt were to grant [Claire's] motion to allow her to amend her petitions, such amendments would have no effect on [Oakes] as he has been dismissed as a respondent and he would not be reinstated as such simply by [Claire] amending her petitions.

The record shows that the additional defendants listed in Claire's 616-page pleading also joined Oakes's motion requesting that the chancellor deny Claire leave to amend her pleading. At a hearing held on March 30, 2016, the chancellor denied Claire's motion to amend her pleading.

¶28. On March 31, 2016 (filed on May 6, 2016), the chancellor entered his final decree, drawing a conclusion to the lengthy litigation below. In his final decree, the chancellor provided in his findings that "on August 25, 2006, Brenda Bargas Flowers died and Knox Lemee[] Flowers was properly appointed Executor to serve without bond, inventory, appraisal and accounting to any court on September 6, 2006." The chancellor also held that Knox's fee for acting as Executor was required to be determined by Brenda's estate, as "there [were] no assets left" in Richard's estate.

¶29. The record reflects that in the text of the final decree, the chancellor expressly identified the bank records and expenditures. The chancellor also expressly set forth an accounting of the estate's debts and assets.

¶30. Additionally, in the final decree, the chancellor awarded Melton Law Firm "reasonable attorney's fees" for services rendered, and held that "the fee for Melton Law Firm . . . is to be determined [by Brenda's Estate] as there are no assets left" in Richard's

11

estate. The chancellor also awarded Osborn, Sutphen, and O'Neal reasonable accounting fees for services rendered, and again stated that the fee would be determined by Brenda's estate, as no assets remained in Richard's estate.

¶31. The chancellor recognized that while Brenda briefly served as executor of Richard's estate upon her appointment on July 14, 2006, she (as executor) advanced personal funds to pay obligations of Richard's estate. The chancellor reviewed the amounts provided, and he found that these amounts were advanced and expended by Brenda in her capacity as executor to pay legitimate expenses of Richard's estate and thus constituted debts to Brenda's estate. As a result, the chancellor held that Brenda's estate was entitled to be reimbursed from the funds remaining in Richard's estate.

¶32. Since Richard's estate lacked assets, the chancellor found moot the issue of whether Brenda and D.A. would be entitled to a widow's allowance or minor's allowance, explaining as follows:

> Brenda . . . is entitled to a widow's allowance and [D.A.], the surviving minor child of Richard . . . , is entitled to a minor's allowance in an amount to be determined by this court. [However,] the Court makes no ruling on the widow's allowance nor the minor's allowance as there are no funds left in the Estate from which to pay such allowances.

¶33. The chancellor then ratified the petition to close Richard's estate, and the chancellor held that no further accounting by Knox as Executor was necessary. The chancellor denied Claire's motion to perfect an inventory and to produce vouchers. The chancellor held that "the [e]state has produced all accountings and documents necessary to satisfy this court that

12

all moneys and assets of the estate have been properly expended and accounted for."[8]

¶34. On May 6 and on May 9, 2016, the chancellor denied Claire's motions for leave to amend in accordance with Rule 15(a) as to the Meltons, Oakes, and Waldo Sterling Stuckey Jr. In all three orders on the matter, the chancellor explained: "[T]he motion filed by [Claire] fails to state how she would amend her prior pleadings or fails to attach a proposed amended pleading which would allow the court to determine whether justice required that she be given leave to file amended pleadings[.]"

¶35. Claire and Jane now appeal, raising four assignments of error, which we address in turn below.

## STANDARD OF REVIEW

¶36. Chancellors are "entitled to deferential review in matters involving questions of fact"; and when reviewing a chancellor's findings of fact, this Court applies a manifest-error standard. *Estate of Brill*, 76 So. 3d at 698 (¶13). We review a chancellor's legal findings de novo. *Id*.

## DISCUSSION

### I.     Knox as Executor

¶37. Claire and Jane argue on appeal that Richard failed to name Knox as executor in his will. As a result, Claire and Jane assert that Knox should never have been named executor of Richard's estate. Claire and Jane claim that due to the chancellor's error in appointing Knox as executor, "every single action [Knox] took was void."

---

[8] The record shows that at the March 31, 2016 hearing to which Claire was a party, various checks written on behalf of Richard's estate were admitted into evidence.

¶38.     Claire and Jane also argue that Knox breached his fiduciary duty to administer the estate.  Claire and Jane state that Claire failed to receive any money from Richard's estate, contrary to Richard's intent as expressed in his will.  Upon review of this case on appeal, we address Claire and Jane's argument regarding Richard's testamentary intent, the accounting of Richard's estate, and the assets of the estate at length later in this opinion.

¶39.     First, we will solely address Claire and Jane's assignment of error asserting that the chancellor abused his discretion in appointing Knox as Executor of Richard's estate.  As stated, Richard's will named Brenda as his primary executor, with his mother-in-law, Helen Baker, and The First Greenwood Bank, listed as alternate executors.[9]  When Richard died, the chancellor admitted Richard's will to probate and appointed Brenda as executor of Richard's estate on July 14, 2006, in accordance with Richard's will.  Brenda began performing her duties as executor upon her appointment, as evidenced by her payment toward debts of Richard's estate.  After probate began on Richard's estate, and after Brenda's death, Knox separately petitioned the court on September 6, 2006, to be appointed as both the executor of Brenda's estate and as Executor of Richard's estate.  In his petition, Knox acknowledged that Richard's will named Brenda as Executor of Richard's estate, but since Brenda died, Knox requested to be substituted as Executor of Richard's estate.  The chancellor then appointed Knox as Executor of Brenda's estate and also as Executor of Richard's estate.

¶40.     The record reflects that in January 2008, less than a year and a half after Knox's

---

[9] Richard executed his will in 1983, when Knox was roughly one and a half years old.

appointment, Claire filed her first motion to disqualify Knox as Executor of Richard's estate. The record shows that in an order entered in February 2008, the chancellor granted Claire "leave to withdraw her Petition for Disqualification of Executor (Fiduciary) dated January 28, 2008," and ruled that "it is therefore withdrawn." On September 4, 2009, Claire filed another motion to disqualify Knox as executor. In an order entered in October 2009, the chancellor denied Claire's motion after finding that Claire "presented no facts to substantiate her claims that [Knox] should be disqualified as Executor de bonis non with will annexed." The record additionally reflects that in the March 31, 2016 final decree, chancellor stated that Knox had been "properly appointed" as Executor.

¶41. Mississippi Code Annotated section 91-7-39 (Rev. 2013) provides the procedure for appointing an Executor:

> If there be no executor named in any last will and testament, or if the executors named all renounce the executorship or, being required to qualify, shall all refuse or fail to do so or shall refuse or wilfully neglect, for the space of forty days after the death of the testator, to exhibit the will and testament for probate or shall all be disqualified, then administration with the will annexed shall be granted to the person who would be entitled to administer according to the rule prescribed for granting administration. Before granting such administration, each executor named in the will and testament who has not renounced the executorship shall be summoned to show cause why administration should not be granted. If any executor named be absent from the state at the time of the probate of the will and administration should be granted during his absence, such executor shall be allowed forty days after his return to make application for letters testamentary and, on his qualifying, the letters of administration shall be revoked; and the administrator shall deliver all the estate which has come to his hands to the executor and settle the account of his administration.[10]

---

[10] *See also* 34 C.J.S. *Executors and Administrators* § 1146:

> A proceeding for the appointment of an administrator with the will annexed is entirely distinct from the proceeding for the admission of a will to probate.

¶42.    Mississippi Code Annotated section 91-7-53 (Rev. 2013) establishes the authority of the chancellor to appoint a temporary administrator when "necessary for the care and preservation of the estate."[11]  Section 91-7-53 provides the following:

> Whenever it shall be necessary for the care and preservation of the estate of a decedent before the grant of letters testamentary, or of administration, to the person entitled thereto, the chancery court or chancellor in vacation, or the clerk of such court, on the petition of any creditor or other interested person, shall appoint a suitable person to be known as "temporary administrator." The person named as executor or the person apparently entitled to letters of administration may be appointed temporary administrator, unless the court shall find that the circumstances require the appointment of a different person.
>
> Whenever an appeal shall be taken from the grant of letters testamentary, or of administration, or whenever a last will and testament shall be contested, the chancery court or chancellor in vacation, on petition of any interested person, may appoint a temporary administrator if it shall appear necessary for the protection of the rights of the parties, and may make such appointment on such terms and impose such conditions as may seem proper.
>
> The powers of such temporary administrator may be special or general, as the court may find proper, and he may be authorized to take charge of, preserve, and administer the estate until the appeal or contest shall be determined. Letters may be issued to him in ordinary form, except that he shall be therein designated as temporary administrator, and any terms or conditions imposed shall be stated therein; and the letters shall state that he is to act only until another appointment shall be made, either temporary or permanent.

¶43.    Additionally, "[a] chancellor has a large [amount of] discretion in the selection of the person to be appointed administrator of an estate except in cases made mandatory by the statute." *Estate of Wallace ex rel. Wallace v. Mohamed*, 55 So. 3d 1057, 1059 (¶8) (Miss. 2011); *In re Estate of Burnside*, 227 Miss. 110, 112, 85 So. 2d 817, 818 (1956).  We also

A written petition for probate of the will is not necessary to give the court jurisdiction to appoint an administrator with the will annexed.

[11] *See also Parker v. Benoist*, 160 So. 3d 198, 210 (¶28) (Miss. 2015).

16

recognize that "[a]n administrator de bonis non [with the will annexed] can be appointed on the removal of an executor or his resignation, without notice to the legatees and without waiting for the final settlement." *Sivley v. Summers*, 57 Miss. 712, 712 (1880).[12]

¶44.    Relevant to this appeal, in *Ricks v. Johnson*, 134 Miss. 676, 99 So. 142, 146 (1924), the Mississippi Supreme Court explained as follows:

> The appointment of an executor by a testator in his will is not absolute, since the right of the one named to act is restricted by statute, and such nomination cannot be final, since the nominee may either accept the office or refuse to serve. But, if the one named in the will as executor is qualified and willing to act, the court must appoint him to the office. If the nominee accepts the appointment under the will, and does not waive his rights by failing to take the proper steps as required by statute for proving the will, the court must, after proper proceedings, appoint him to the office unless he be shown to be incompetent or disqualified for some legal cause. The testator has the right to select as executor of his last will any one whom he may desire and the fitness of the one selected by the testator is not a matter which the court can investigate except in the cases where the law has specially so provided.

The supreme court further held as follows:

---

[12] However, a final accounting provided by the Executor "would be void for want of such notice." *Id*. at 723. *See also* 34 C.J.S. *Executors and Administrators* § 1143:

> Where a decedent has left a will but such will does not nominate any executors, or none of the persons named as executors can or will act as such, the court appoints a person to perform the necessary duties connected with the settlement of the estate, and such appointee is termed an administrator "with the will annexed," or "cum testamento annexo." Such an appointment is also proper where the person nominated as executor is incompetent or unfit for appointment, renounces, or dies without having applied for letters testamentary, or where an executor who has qualified dies, resigns, or is removed before the estate is completely administered. Administration with the will annexed should not be granted unless the exigency is made apparent. Executors named, if alive and competent, should have full opportunity to take or renounce the trust. It is also necessary that there should be a valid will, which has been duly admitted to probate. There must, of course, be assets to be administered by the appointee as administrator.

*If qualified and willing to act, the nominee of the testator must be appointed executor. It has, however, been held that, where conditions after the death of the testator had so changed that, had he anticipated them, he unquestionably would have made a different choice, the court in its discretion could refuse to appoint the one named in the testator's will.* The purpose of the law in securing this right manifestly is to enable the testator to control the disposition of the estate and to name the person who shall exercise this power and right.

*Id*. (emphasis added).

¶45. We find nothing in the record to reflect that Knox's petition to the chancellor to serve as Executor of Richard's estate was served on the beneficiaries of Richard's will or the alternate executors named in Richard's will prior to his appointment. However, the record shows that during the course of the ten years of litigation, Claire and Jane possessed sufficient notice of the chancellor's appointment of Knox as Executor of Richard's estate to raise the issue of the propriety of the appointment and of Knox's qualifications. The record reflects that over the years, Claire filed several petitions wherein she indeed raised the issue of Knox's qualifications and the propriety of his appointment to the consideration of the chancellor—one in January 2008, and a second in September 2009. The record additionally reflects that Claire and Jane had ample notice of the multiple motion hearings, including the March 30, 2016 hearing.

¶46. As stated, "[a] chancellor has a large [amount of] discretion in the selection of the person to be appointed administrator of an estate[.]" *Estate of Wallace*, 55 So. 3d at 1059 (¶8). Additionally, we apply a manifest-error standard when reviewing a chancellor's findings of fact. *Estate of Brill*, 76 So. 3d at 698 (¶13). Upon review, the record reflects that probate of Richard's estate had opened and that Brenda, the appointed executor, died during the course of her duties as executor. The chancellor possessed the discretion to appoint an

18

Executor in order to represent the best interests and the preservation of Richard's estate.[13]

Moreover, the record shows no abuse of discretion by the chancellor in appointing Knox to serve in this capacity. Therefore, we find no reversible error by the chancellor in appointing Knox as Executor. *See Estate of Wallace*, 55 So. 3d at 1059 (¶8); *In re Estate of Burnside*, 227 Miss. at 112, 85 So. 2d at 818.

## II.    Accounting

¶47.    Claire and Jane next assert that Knox failed to honor the clear wishes of Richard's will and thus breached his fiduciary duty to administer the estate. Claire and Jane claim that Richard "decreed that Claire would receive half of the remaining estate," but Claire failed to receive any money from the estate. Claire and Jane assert that Knox mismanaged the estate's funds and failed to provide an accounting of the assets and expenditures of Richard's estate. Upon review, we acknowledge that the chancellor found that upon approving the final accounting and closing of Richard's estate, the estate possessed no assets.

¶48.    "On appeal, this Court 'will not reverse a chancery court's findings, be they of ultimate fact or of evidentiary fact, where there is substantial evidence supporting those findings.'" *Langston v. Williams (In re Estate of Langston)*, 57 So. 3d 618, 619 (¶16) (Miss. 2011).

¶49.    As stated, Knox possessed the duty as the Executor of Richard's estate to file a final accounting and have it approved by the chancellor. *Hayes v. Holman*, 165 Miss. 494, 144 So. 690, 692 (1932); *see* Miss. Code Ann. § 91-7-47 (Rev. 2013) (functions of fiduciary with

---

[13] *See Sivley*, 57 Miss. at 712.

will annexed).[14] The record reflects that in its March 31, 2016 final decree, the chancellor stated that Knox had provided and filed "a complete accounting of all assets belonging to [Richard] from the last accounting in the Conservatorship in December of 2002 through the date of the filing of the Petition to Close Estate." After reviewing the accounting filed by Knox, the chancellor held "[t]hat all acts of [Brenda] and [Knox], and all accountings heretofore filed in this cause are ratified, confirmed and approved." The chancellor expressly identified monetary advances paid by Brenda on behalf of Richard's estate, which the chancellor determined constituted legitimate expenses.

¶50. With respect to the final accounting, the final decree further provided as follows:

> That [Knox] has not received any compensation for acting as Executor De Bonis Non with Will Annexed of this Estate and he requested that this Court upon the hearing herein approve a proper amount as a fair compensation for his time and expenses in serving in this capacity. The Court does find that the

---

[14] Mississippi Code Annotated section 91-7-47 provides:

(1) Every executor or administrator with the will annexed, who has qualified, shall have the right to the possession of all the personal estate of the deceased, unless otherwise directed in the will; and he shall take all proper steps to acquire possession of any part thereof that may be withheld from him, and shall manage the same for the best interest of those concerned, consistently with the will, and according to law. He shall have the proper appraisements made, return true and complete inventories except as otherwise provided by law, shall collect all debts due the estate as speedily as may be, pay all debts that may be due from it which are properly probated and registered, so far as the means in his hands will allow, shall settle his accounts as often as the law may require, pay all the legacies and bequests as far as the estate may be sufficient, and shall well and truly execute the will if the law permit. He shall also have a right to the possession of the real estate so far as may be necessary to execute the will, and may have proper remedy therefor.

(2) In addition to the rights and duties contained in this section, he shall also have those rights, powers and remedies as set forth in Section 91-9-9.

fee for [Knox] for acting as Executor De Bonis Non with Will Annexed is to be determined in the Estate of [Brenda] as there are no assets left in the Estate of [Richard].

That the Estate is indebted to the Melton Law Firm, PLLC, Attorneys, for reasonable attorney's fees and services rendered in this cause and expenses incurred in rendering these services in this cause and upon a hearing herein, the Executor requested that this Court approve a reasonable amount to be paid. That the Court does find that the fee for Melton Law Firm, PLLC, Attorneys is to be determined in the Estate of [Brenda] as there are no assets left in the Estate of [Richard].

That the Estate is indebted to Orsborn, Sutphen & O'Neal, CPAs[,] for reasonable accounting fees and services rendered in this cause and to be rendered for final return preparation[,] and the Executor requested this Court approve a reasonable amount to be paid. The Court does find that the fee for Orsborn, Sutphen & O'Neal, CPAs[,] for reasonable accounting fees and services rendered in this cause and to be rendered for final return preparation is to be determined in the Estate of [Brenda] as there are no assets left in the Estate of [Richard].

That while serving as Executrix in this cause, [Brenda] advanced personal funds to pay Estate obligations as follows, to-wit:

| 04/14/06 | CK#849 | Heritage Photography | $48.15 |
| 05/04/06 | CK#804 | Market Place (Food for Memorial Service) | $143.92 |
| 05/07/06 | CK#805 | Reverend Bernard Nail | $75.00 |
| 05/08/06 | CK#807 | Big Star (Food for Memorial Service) | $47.52 |
| 06/05/06 | CK#1001 | [Insurance Co.] (Funeral Services) | $1,705.25 |
| 07/13/06 | CK#1003 | Floyd M. Melton, Jr. (Legal Fees) | $25,000.00 |
| 07/13/06 | CK#1004 | Hospice Ministries | $990.00 |
| 07/13/06 | CK#1005 | Planters Bank & Trust | $27,985.70 |

(Paid off 306 W. Church Loan)

| 07/13/06 | CK#1006 | Planters Bank & Trust (Paid off Monroe Street Loan) | $20,049.92 |
| 07/13/06 | CK# [sic] | [CPAs] (Accounting Services) | $8,168.00 |
| 07/13/06 | CK#1009 | [Land Redemption] (Redeemed 2004 Taxes) | $2,477.76 |
| 07/13/06 | CK#1010 | [Tax Collector] (2005 Property Taxes) | $1,827.96 |
| 07/13/06 | CK#1011 | [Land Redemption] (2003 Taxes) | $2,842.67 |
| 07/17/06 | CK#1012 | [Conservatorship account] (To Pay Final Bills for Richard Flowers) | $5,000.00 |

Total Advances on behalf of the Estate                 $96,361.85

That the Executor De Bonis Non with Will Annexed of this Estate requested that this Court approve such sums as it may see fit to be repaid to the Estate of [Brenda] being administered in Cause No. E06-0089 in this Court. The Court finds that the above listed sums were advanced and expended by [Brenda] to pay legitimate expenses of the Estate of [Richard], and that the Estate of [Brenda] is entitled to be reimbursed from the funds remaining in the Estate of [Richard], the extent that the Estate has funds to reimburse the Estate of [Brenda].

After reviewing the accounting provided by Knox, the chancellor determined that Knox's executor fee, the Meltons' attorneys' fees, and the fee to the accounting firm must all be determined by Brenda's estate, as "there are no assets left" in Richard's estate.

¶51. We further acknowledge that the record reflects that at the March 30, 2016 hearing on Knox's petition to close Richard's estate and approve the final accounting, Claire admitted that she possessed a copy of the final accounting of Richard's estate. The record

22

reflects that Claire also possessed notice as to Knox's sale of two parcels of real property owned by Richard's estate, as well as notice of the many other filings in the record of this lengthy litigation.[15] In determining that the final accounting herein, as set forth in the final decree, constitutes a sufficient final accounting, we find the precedent of *McLemore v. McLemore (In re Estate of McLemore)*, 63 So. 3d 468, 493 (¶79) (Miss. 2011), instructive.

¶52.    In *Estate of McLemore*, 63 So. 3d at 493 (¶79), the supreme court reviewed the chancellor's denial of a motion to order the co-executor of an estate to account for estate funds and property. The supreme court explained that the co-executor had been called to testify before the trial court regarding the estate funds, and the chancellor had available to him the bank records of the new rental account and a summary of all the receipts and expenditures made on behalf of the estate. *Id*. at (¶78). In denying the motion for an accounting, the chancellor opined: "There's got to be an end to this somewhere certainly. I would think that that was litigated, discussed, testified to under oath." *Id*. at (¶79). Upon review, the supreme court found no abuse of discretion of the chancellor's denial of the motion. *Id*.

---

[15] As previously explained in this opinion, the record contains two orders entered by the chancellor approving and authorizing Knox's sale of real property owned by Richard's estate: (1) a May 16, 2008 order approving the sale by Knox of real property located at 304 East Monroe Street, Greenwood, Mississippi, for the amount of $65,000, less the prorated taxes for the year 2008, a six-percent commission to Bowie Realty in the amount of $3,900, and a termite inspection in the amount of $107; and (2) a September 11, 2009 order approving the sale of real property located at 306 West Church, Greenwood, Mississippi, for $20,200 and authorizing the execution of any and all documents necessary to complete the sale, less the prorated taxes for the year 2009 in the amount of $1,225.32, and a six-percent commission to Bowie Realty in the amount of $1,212. The chancellor ordered that Knox, as Executor, deposit the balance of the funds in the estate account.

¶53. After reviewing the present matter, we find, similar to *Estate of McLemore*, that the record contains substantial evidence in support of the chancellor's determination that Knox provided an adequate accounting of Richard's estate. We also find that the record shows that throughout the ten years of litigation herein, Claire possessed notice of the estate actions, debts, liquidation of funds, and property sales. She also possessed access to the court file. Therefore, similar to *Estate of McLemore*, 63 So. 3d at 493 (¶79), we find that the estate accounting was litigated, sufficiently determined, and sufficiently provided, as set forth in the chancellor's final decree. *See also Estate of Langston*, 57 So. 3d at 619 (¶16).

### III. Attorneys' Fees

¶54. Claire and Jane submit that the chancellor erred in awarding a fee paid by Richard's estate to Knox's attorneys. Claire and Jane argue that the attorneys failed to submit a bill, time calculation, or showing of work performed; rather, the attorneys simply made a request for a "reasonable fee."

¶55. "The decision whether to award attorney's and [executor's] fees is a matter addressed to the sound discretion of the chancery court. In the absence of an abuse of that discretion, this Court will not disturb the chancellor's rulings." *Lynn v. Lynn (In re Last Will & Testament of Lynn)*, 878 So. 2d 1052, 1057-58 (¶22) (Miss. Ct. App. 2004); *see also* Miss. Code Ann. §§ 91-7-47 and 91-7-53.

¶56. Notwithstanding the lack of estate assets herein, we acknowledge that precedent establishes a temporary administrator is "entitled to compensation for, and necessary attorney's fees incurred in, the performance of [the] duties on the same basis as would a regular administrator for the performance of the same duties." *King v. Wade*, 175 Miss. 72,

24

166 So. 327, 329-30 (1936). Furthermore, Mississippi Code Annotated section 91-7-261 (Rev. 2013) (insolvent estates) provides as follows, establishing that creditors of an estate must be paid before any heir receives distribution or inheritance:

> The executor or administrator shall take proper steps speedily to ascertain whether the estate be solvent or insolvent. If both the real and personal estate be insufficient to pay the debts of the deceased, he shall exhibit to the court a true account of all the personal estate, assets of every description, the land of the deceased, and all the debts due from the deceased; and if it appear to the court that the estate is insolvent, it shall make an order for the sale of all the property. The proceeds of such sale and all other assets shall be equally distributed among all the creditors whose claims shall be duly filed and established, in proportion to the sums due and owing to them respectively, the expenses of the last sickness, the funeral, and the administration, including commissions, being first paid.

¶57. As previously stated and as reflected in the final decree, upon closing Richard's estate, the chancellor provided substantial evidence to support his finding that no assets remained in the estate. In his March 31, 2016 final decree, the chancellor held as follows:

> That the Estate is indebted to the Melton Law Firm, PLLC, Attorneys, for reasonable attorney's fees and services rendered in this cause and expenses incurred in rendering these services in this cause and upon a hearing herein, the Executor requested that this Court approve a reasonable amount to be paid. That the Court does find that the fee for Melton Law Firm, PLLC, Attorneys[,] is to be determined in the Estate of [Brenda] as there are no assets left in the Estate of [Richard].

The chancellor determined that Knox's attorneys, the Meltons, were entitled to receive attorneys' fees, but since no assets remained in Richard's estate, the fee must be determined by Brenda's estate.

¶58. Upon review, we find that the chancellor was within his discretion to award attorneys' fees to Melton Law Firm, as well as executor's fees to Knox. *See In re Lynn*, 878 So. 2d at 1057-58 (¶22); Miss. Code Ann. § 91-7-261 (creditors of an estate must be paid before heirs

25

receive distribution or inheritance). This issue lacks merit.

### IV.    Rule 15 Motion to Amend

¶59.    Finally, Claire and Jane appeal the denial of Claire's motion for leave to admit her amended petition for compensatory and punitive damages. Claire and Jane argue that leave to amend should have been granted because none of the respondents asserted that they would be prejudiced if the motion were granted.

¶60.    In her amended petition, Claire sought to include claims against the various attorneys involved in the representation of Richard's estate, Brenda's estate, and the guardianship of D.A.    At a hearing on Claire's motion, the chancellor made a bench ruling wherein he granted Oakes's Rule 12(b)(6) motion to dismiss Claire's petition for failure to state a claim upon which relief could be granted.  The chancellor also granted Oakes's and the Meltons' (among others) motions to strike themselves as defendants in the cause due to Claire's failure to obtain leave from the court under Mississippi Rule of Civil Procedure 21 to add them.

¶61.    As stated, in response to the chancellor's order of dismissal under Rule 12(b)(6), on February 16, 2016, Claire filed a motion for leave to amend her petition for compensatory and punitive damages, and her amended petition for compensatory and punitive damages in accordance with Rule 15(a).  In her motion, Claire stated that she "specifically requests that she be allowed to amend those portions of the complaints by which the court ruled were insufficient at stating a claim for relief.  Those portions include stating fraud and negligence per se with the correct specificity."

¶62.    The defendants listed in Claire's petition joined Oakes's motion requesting that Claire's motion for leave to amend be denied.  The defendants argued that Claire failed to

26

"attach a proposed amended petition that would permit the chancellor to determine whether justice requires that leave to amend be granted" and that the parties were "dismissed as [respondents] . . . as a result of [Claire's] failure to obtain leave of court to add [them] as part[ies]."

¶63. We review the denial of a motion to amend for abuse of discretion. *Crater v. Bank of New York Mellon*, 203 So. 3d 16, 19 (¶7) (Miss. Ct. App. 2016). We will affirm the chancellor's decision "unless the discretion he used is found to be arbitrary and clearly erroneous." *Breeden v. Buchanan*, 164 So. 3d 1057, 1064 (¶27) (Miss. Ct. App. 2015) (quoting *Poole ex rel. Poole v. Avara*, 908 So. 2d 716, 721 (¶8) (Miss. 2005)).

¶64. Rule 15(a) provides as follows:

> On sustaining a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6), . . . leave to amend shall be granted when justice so requires upon conditions and within time as determined by the court, provided matters outside the pleadings are not presented at the hearing on the motion.

Regarding Rule 15 amendments to pleadings, the supreme court has held as follows:

> While proposed amendments have been liberally permitted throughout Mississippi legal history and are encouraged under Rule 15[,] a party cannot fail to convey the subject matter of the proposed amendment to the trial judge and if they do so fail, no error can be predicated on the judge's failure to allow the amendment.

*Parker v. Miss. Game & Fish Comm'n*, 555 So. 2d 725, 730-31 (Miss. 1989). Additionally, in *Price v. Price*, 430 So. 2d 848, 849 (Miss. 1983) (citing *Watts v. Patton*, 66 Miss. 54, 5 So. 628 (1888)), the supreme court explained that a chancellor's refusal to allow the amendment of a pleading cannot be reviewed on appeal where the record fails to show the proposed amendment.

¶65. In his order denying Claire's motion for leave to amend in accordance with Rule 15(a), the chancellor explained the following: "[T]he motion filed by [Claire] fails to state how she would amend her prior pleadings or fails to attach a proposed amended pleading which would allow the court to determine whether justice required that she be given leave to file amended pleadings[.]" The record reflects that the motion to amend filed by Claire contained only bare allegations and contained no facts or actions from which to determine the existence of a cause of action. *See also* M.R.C.P. 9(b) (providing that fraud must be pled with specificity); *Faul v. Perlman*, 104 So. 3d 148, 156 (¶26) (Miss. Ct. App. 2012) (discussing the elements a plaintiff must show to establish negligence per se). The record reflects that the chancellor thus properly found that Claire failed to state a basis for amending her pleadings. *See Parker*, 555 So. 2d at 730-31.

¶66. Additionally, with respect to a claim of fraud, we recognize the following guidance:

> [T]he facts on which the charge of fraud is predicated must be specifically stated with full definiteness of detail. No general averment of a fraudulent course of business, and no bare statement of a corrupt design on the part of the defendant, is sufficient. The acts themselves which are claimed to be fraudulent must be clearly set out. It must further appear by definite averment in what manner the fraudulent acts wrought injury to the complainant. Fraud cannot be inferred, but must be distinctly charged, and with such fullness and precision that a court of chancery would be enabled to grant full and complete relief and redress should the bill of complaint be taken as confessed.

*Weir v. Jones*, 84 Miss. 602, 36 So. 533, 534 (1904). Claire's failure to provide a basis for amending her pleadings and her failure to plead fraud and negligence with the required specificity prevented the chancellor from determining whether Claire had a cause of action or just allegations without facts.

¶67. Furthermore, as previously stated, the record also shows that Oakes, Stuckey, Melton

28

Jr., and Melton III were dismissed from the litigation as defendants because Claire failed to obtain leave of court before she added the attorneys as parties as required by Rule 21. Claire filed no appeal of the dismissal of the attorneys as parties. In *Crater*, 203 So. 3d at 21 (¶16), this Court addressed a Rule 15(a) motion to amend filed against a nonparty:

> Because the motion to amend asserted claims only against a nonparty, devoid of any factual allegation, after the statute of limitations had run, and sought to exercise a statutory right that does not exist, the claims raised by [the petitioner] in her amended complaint were futile. Because the amendment was futile, the chancery court was not required to grant leave for the amendment. Therefore, the chancery judge did not abuse his discretion in ruling on the motion to dismiss prior to ruling on [the petitioner's] motion to amend.

¶68. Accordingly, we find no abuse of discretion in the chancellor's denial of Claire's motion to amend.

¶69. **AFFIRMED.**

**LEE, C.J., GRIFFIS, P.J., GREENLEE AND TINDELL, JJ., CONCUR. IRVING, P.J., AND BARNES, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WILSON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. FAIR AND WESTBROOKS, JJ., NOT PARTICIPATING.**